UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PHILLIP CARROLL,

    Plaintiff,

                                    Case No. 09-10462
-vs-                                    HON. AVERN COHN

CITY OF TAYLOR, et al.

    Defendants.

_____/

## MEMORANDUM AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. INTRODUCTION

This is a civil rights case brought under 42 U.S.C. § 1983 and pendent state law, arising out of events that occurred during plaintiff Phillip Carroll's (Carroll) December 14, 2006, domestic violence arrest. Defendant City of Taylor (City) is a municipal entity. Defendants Sepell, Genzel, Shewchuk, Howell, and Culp (collectively, defendants) are City police officers. Carroll generally claims that Sepell and Genzel (collectively, Officers) used excessive force on him during the arrest, Howell and Culp (collectively, Supervisors) and Shewchuk failed to prevent the Officer's acts, and the City failed to train the Officers in the proper performance of their duties.

Particularly, Carroll claims that after he was arrested, and while he was handcuffed in the back of a police vehicle, Sepell choked him and Genzel intentionally slammed on the brakes of the police vehicle while driving him to the police station, causing him neck and head injuries.

The complaint is in four counts:

(I)   42 U.S.C. § 1983, as to the Officers (Excessive Force);

(II)  42 U.S.C. § 1983, as to the Supervisors and Shewchuk (Failure to Act), and the City (Failure to Train);

(III) M.C.L. 691.140 Willful and Wanton Misconduct (Gross Negligence);

(IV)  Intentional Infliction of Emotional Distress.

An order dismissing originally named defendants police officers Raboczkay, Neal, and Cole was entered on July 6, 2010. (Doc. 12). At a hearing on November 10, 2010, the Court heard arguments on defendants' summary judgment motion and ordered Carroll to file (1) a statement of the material facts in dispute, officer specific, which require a trial on the issue of liability, and (2) a statement of material facts in dispute relating to injuries proximately caused by identifiable officers. (Doc. 22). Carroll filed the requested statements on November 22, 2010. (Docs. 23, 24).

Now before the Court is defendants' motion for summary judgment on grounds that Carroll lacks evidence to support his claims, that defendants did not violate Carroll's constitutional rights, and that defendants are entitled to qualified and governmental immunity.

For the reasons that follow, the motion will be granted in part and denied in part.

## II. BACKGROUND

The facts as the Court understands them from the parties' papers are as follows.

### A. 911 Call

On December 14, 2006, a caller twice alerted 911 to a situation involving Carroll. (Doc. 13-11). The caller informed a 911 dispatcher that police assistance was needed

2

because of a domestic abuse incident between Carroll and Susan Stoddard (Stoddard), Carroll's then fiancé. The 911 caller also told the dispatcher that Carroll was driving erratically and at high speeds around the neighborhood and that he was afraid Carroll was going to kill someone.

### B. The Arrest

Genzel was the first officer to arrive on the scene following the 911 calls. Howell arrived next and, together, they arrested Carroll. The facts surrounding what happened after the arrest are the basis for Carroll's claims, and are in dispute.

#### 1. Caroll

Carroll says he was arrested by two officers. (Doc. 13-8). He says he does not know why he was arrested, but admits to having an argument with Stoddard leading up to the arrest. Carroll asserts that he was handcuffed and placed in the back of the police vehicle without incident by an officer he thinks was Genzel.

As to the choking claim, Carroll says that after he was arrested he noticed Stoddard getting into a van behind the police vehicle. He was curious as to what was going on, so he turned around and looked back at her. At that point, Carroll says Sepell opened the back door of the police vehicle where he was sitting and said "Oh, it's you. If I would have got here first, you'd be laying in a pool of blood. I hate you, you asshole. Don't be looking at her." Next, Carroll asserts that Sepell put both of his hands around his throat, choked him, and then slammed his head against the police vehicle's plexiglass divider, telling Carroll that he hated him and causing him to lose consciousness. When asked in his deposition whether he told the emergency room doctors about being choked, Carroll said he told someone at the hospital, but he could not remember who.

3

As to the intentional slamming on the brakes claim, Carroll asserts that while he was being transported to the police station, Genzel slammed on the brakes of the police vehicle in order to cause him to hit his head against its plexiglass divider.

In addition to his deposition testimony, Carroll proffers photographs taken "shortly after his release from jail," which show bruising to his neck and forehead. (Doc. 24). Carroll also proffers medical evidence, which describe that he was treated for neck pain following the arrest.

### 2. Officers

Sepell arrived on scene with his K-9 partner, Cash, to perform a dog check of Caroll's vehicle for narcotics. Sepell denies having any contact with Carroll while he was at the scene and denies Carroll's choking claim. (Doc. 13-17).

Genzel says that he was the officer who handcuffed Carroll and placed him into the back of the police vehicle without incident. (Doc. 13-14). He denies having any contact or conversation with Carroll after placing him under arrest and into the police vehicle.

### 3. Supervisors

As stated, Howell arrived at the scene after Genzel and assisted him in arresting Carroll. (Doc. 13-5). Howell says that while Carroll was being handcuffed and placed into the police vehicle, Carroll appeared "slightly excited." (Doc. 13-15). Howell asserts that he does not recall Carroll yelling or being combative during the arrest.

After Carroll was placed in the police vehicle, Howell continued to investigate the 911 call by speaking to eyewitnesses at the scene and performing a search inside Carroll and Stoddard's home. Howell says he did not have any contact with Carroll after he was placed into the police vehicle.

4

Culp was the sergeant in charge at Carroll's investigation scene. He says he was the officer that opened the police vehicle back door where Carroll was sitting, but denies having any physical contact with him. (Doc. 13-19). Rather, Culp says he told Carroll to calm down, then shut the door and continued his investigation in the house, away from the vehicle. Culp denies choking Carroll and says that he did not see any other officer touch Carroll, nor does he recall seeing any injuries on him.

### 4. Shewchuk

Shewchuk says he arrived at the scene after Genzel and Howell. (Doc. 13-16). He says he observed Carroll while Genzel went inside Carroll and Stoddard's home. Shewchuk says he saw a police officer open the police vehicle back door to calm Carroll down, but could not recall what prompted the police officer to do so. (Doc. 13-16).

### 5. Eyewitnesses

Trasha Anderson (Anderson) and Stoddard were eyewitnesses to Carroll's arrest. Anderson says that Carroll was "out of control" prior to being apprehended. (Doc. 13-12). She says she saw a police officer open the police vehicle back door, but says she did not see any officer "hit, kick, strike, choke, punch or slam" Carroll's head, or get physical with him. (Doc. 13-12). Finally, Anderson says she saw the police vehicle drive off with Carroll and did not see anything unusual when the police vehicle drove away.

Like Shewchuk and Anderson, Stoddard also says she saw a police officer open the back door of the police vehicle to calm Carroll down. (Doc. 13-7). Stoddard asserts that the police officer grabbed Carroll's face in such a way as to tell Carroll to "knock it off." Like Anderson, Stoddard says she did not see any officer choke, punch, kick, or slap Carroll while he was in the back of the police vehicle. Stoddard says that after the incident Carroll

5

told her that he inflicted his injuries on himself by slamming his head into the police vehicle cage so that "he could file a suit against them."

## III. STANDARD OF REVIEW

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When ruling on a motion for summary judgment, the evidence must be viewed in a light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. Muhammad v. Close, 379 F.3d 413, 416 (6th Cir.2004).

However, the nonmoving party may not rest upon his pleadings and "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Showing that there is some metaphysical doubt as to the material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. Anderson, 477 U.S. at 252. Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. Moore v. Philip Morris Co., 8 F.3d 335, 340 (6th Cir. 1993); see Anderson, 477 U.S. at 249–50.

Finally "[a]lthough the nonmoving party 'may not rest upon the mere allegations or

denials' of his pleading . . . a verified complaint or additional affidavit . . . satisfies the burden of the nonmovant to respond." Smith v. Campbell, 250 F.3d 1032, 1036 (6th Cir. 2001) (quoting Fed.R.Civ.P. 56(c)).  However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

## IV. ANALYSIS

### A. § 1983: Excessive Force

1.

A claim of excessive force in the course of making an arrest is properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  Marvin v. City of Taylor, 509 F.3d 234 (6th Cir.2007) (citing Graham v. Connor, 490 U.S. 386, 388 (1989)). The objective reasonableness standard of the defendant's conduct, "'depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight.'" Grawey v. Drury, 567 F.3d 302, 310 (6th Cir. 2009)(quoting Fox v. DeSoto, 489 F.3d 227, 236 (6th Cir. 2007)).  "Among the most important factors to consider in determining the objective reasonableness of the force used are: 1) the severity of the crime at issue; 2) whether the suspect posed an immediate threat to the safety of the police officer or others; and 3) whether the suspect actively resisted arrest or attempted to evade arrest by flight." Grawey, 567 F.3d at 310.

2.

First, as to the choking, Sepell denies Carroll's claim and denies having any physical

contact with him during the arrest. Notably, Culp, not Sepell, says he was the officer that interacted with Carroll in the police vehicle, but denies choking him. Further, as previously stated, Anderson and Stoddard say they did not see any officer choke Carroll.

The medical evidence is also contradictory. Particularly, the EMT report shows that Carroll reported neck pain. However, it does not describe Carroll as suffering from visible neck injuries. The hospital records and the jail's medical screening form also describe that Carroll suffered from neck pain, but do not report visible neck injuries consistent with being choked. Further, neither the EMT report, the hospital records, nor the intake medical screening form indicate that Carroll reported being choked at the time that he was examined. Rather, the EMT and intake form describe that Carroll reported being in an accident several weeks before the incident, and the hospital records note that Carroll reported his injuries occurred "just prior to arrival," "& 3 weeks ago." Finally, Stoddard says that Carroll admitted to her that he fabricated his injuries in order to sue the defendants. However, the photographs of Carroll clearly show bruising to the neck and forehead.

Under Scott v. Taylor, supra, a Court should not adopt a parties' version of the facts when it is "blatantly contradicted by the record, so that no reasonable jury could believe it." Here, Carroll's version of events is for the most part contradicted by officer and eyewitness testimony as well as medical evidence. However, viewed in a light most favorable to Carroll, the photographic evidence is such that a rational juror could find that Sepell, the officer identified by Carroll as committing the choking and who acknowledges being present during Carroll's arrest, used excessive force against him. Thus, Sepell is not entitled to summary judgment.

3.

As to the intentional slamming on the brakes, Genzel denies having any physical contact with Carroll after the arrest. However, the record does not show that Genzel directly denies slamming on the brakes to cause Carroll injury. Further, Anderson says that she did not see anything unusual when Genzel pulled away with Carroll in the police vehicle. However, because Anderson did not have the vehicle in sight during the entire trip to the police station, her assertion has limited weight.

Next, the medical evidence shows that Carroll had head injuries following the incident, as does the photographic evidence. However, as previously stated, Carroll did not report that his head injuries were caused by Genzel's act. Rather, Carroll reported that the injuries occurred just prior or three weeks prior in a motor vehicle accident. Further, as described above, Stoddard says that Carroll admitted to inflicting the head injuries on himself.

Despite the contradictory evidence in the record, the medical reports and photographs are sufficient to create a genuine issue of material fact such that a rational juror could find for Carroll related to his claim against Genzel. Thus, Genzel is not entitled to summary judgment.

### B. § 1983: Failure to Act

1.

Next, Carroll makes a claim of liability against the Supervisors based on their "implicit" authorization of the Officer's unlawful acts. However, the record establishes nothing more than their presence at the arrest scene, which fails to make out a claim for supervisory liability under § 1983. Rather, a supervisory liability claim requires a showing

9

"that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." Hays v. Jefferson County, 668 F.2d 869, 874 (6th Cir.1982). Carroll proffers no such evidence as to the Supervisors here. Particularly, both Howell and Culp admit to being at the scene, and Culp admits to contact with Carroll to calm him down. However, there is no evidence that either ordered, participated in, or knew of the claimed unconstitutional acts. Thus, Carroll's claim is without merit.

2.

Caroll also claims that Shewchuk is liable because he witnessed the choking by Sepell, but failed to act. As with supervisory officers, "non-supervisory officers present during a violation of person's civil rights who fail to stop the violation can be liable under § 1983." Sargent v. City of Toledo Police Dept., 150 Fed. Appx. 470, 474 (6th Cir. 2005) (unpublished).

Here, Shewchuk says that he saw the encounter between Sepell and Carroll, but denies that Sepell choked him. While there is a genuine issue of material fact related to the choking, the record does not support that Shewchuk saw it happen or was in a position to prevent it. Thus, without more, Shewchuk is entitled to summary judgment.

### C. § 1983: Failure to Train

Carroll next asserts that a City policy caused the unconstitutional acts because "there is no other credible reason that [Carroll] would subject himself to the outrageous conduct of the Taylor Police Department." Carroll further asserts that the City's failure to train caused the unconstitutional acts, a claim he says can be shown by the lack of reporting related to the choking and screen test incidents. Particularly, Carroll says the

10

absence of reporting shows a widespread custom, which exposes the City to liability. Carroll's argument is without merit.

Under Monell v. Dept. of Soc. Servs., 436 U.S. 658, 694 (1978), a local government may be liable as an entity when "execution of government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." To find municipal liability, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy. Gardner v. Memphis Police Dep't, 8 F.3d 358, 364 (6th Cir. 1983).

Carroll has not cited a specific policy that, when executed by the Officers, caused Carroll's injuries. Nor has Carroll proffered any evidence that the City failed to train the Officers on how to make an arrest. Thus, Carroll has not met the burden required under Monell and the City is entitled to summary judgment.

### D. Qualified Immunity

Since it has been determined that Carroll has established facts to support his excessive force claim against the Officers, he must also overcome their claim to qualified immunity by showing that (1) the facts alleged, taken in the light most favorable to Carroll, show that their conduct violated his constitutional rights and (2) the rights were clearly established, that is, the right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier v. Katz, 533 U.S. 194, 201–02 (2001) (internal quotation marks omitted). In other words, the Court must determine whether the Officers acted reasonably under the circumstances.

Here, if Carroll's allegations prove to be true, choking and intentionally slamming on the brakes to cause him injury is not reasonable. Thus, the Officers are not entitled to qualified immunity related to Carroll's excessive force claim.

## E. State Claims

Finally, Carroll asserts two state claims, gross negligence and intentional infliction of emotional distress.

### 1.

First, under Michigan law, "'[g]ross negligence' means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Trethewey v. Stimac, 2010 WL 3583082, 8 (E.D.Mich.,2010)(quoting M.C.L. § 691.1407(7)(a)).

### 2.

Next, the Michigan Supreme Court "has not officially recognized" intentional infliction of emotional distress as a tort, but "[a]ssuming that the cause is valid," a plaintiff must show "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." Vanvorous v. Burmeister, 262 Mich. App. 467 (2004) (internal quotation marks and citations omitted). "Liability for the intentional infliction of emotional distress has been found only where the conduct complained of has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." Garretson v. City of Madison Heights, 407 F.3d 789, 799 (6th Cir.2005) (internal quotation marks and citation omitted). "Liability will not be found for mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities; rather, the case must be one in which the facts would arouse the resentment of an average member of the community against the actor, leading

him to exclaim, 'Outrageous!'" Garretson, 407 F.3d at 799 (internal quotation marks and citations omitted).

3.

Here, as with the excessive force claim, Carroll's deposition testimony, along with the medical and photographic evidence, viewed in a light most favorable to Carroll, present a genuine issue. Thus, the Officers are not entitled to summary judgment on the gross negligence claim.

However, Carroll has not shown that, if true, their acts rise to a level "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society," as required under Garretson, supra. Thus, the Officer's are entitled to summary judgment on the intentional infliction of emotional distress claim.

**F. Governmental Immunity**

As to the Officer's governmental immunity claim, to qualify for governmental immunity for gross negligence, the Michigan governmental immunity statute provides:

> 1. Except as otherwise provided in this section, and without regard to the discretionary or ministerial nature of the conduct in question, each officer and employee of a governmental agency ... is immune from tort liability for an injury to a person or damage to property caused by the officer, employee, or member while in the course of employment or service ... if all of the following are met:
> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's, employee's, member's, or volunteer's conduct

          does not amount to gross negligence that is the proximate
          cause of the injury or damage.

M.C.L. § 691.1407(2).

As previously stated, if Carroll's allegations prove to be true, choking and intentionally slamming on the brakes to cause him injury is not reasonable. Thus, the Officers are not entitled to governmental immunity related to Carroll's gross negligence claim.

## VI. CONCLUSION

For the reasons stated above, the motion is GRANTED and the case DISMISSED as to the claims against Howell, Culp, Shewchuk, and the City. The motion is also GRANTED and the case DISMISSED as to the intentional infliction of emotional distress claim against Genzel and Sepell. Finally, the motion is DENIED as to the excessive force and gross negligence claims against Genzel and Sepell. The record is such as to require resolution by trial on these claims only.

    SO ORDERED.


Dated: December 29, 2010                    S/Avern Cohn
                                                    AVERN COHN
                                                    UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 29, 2010, by electronic and/or ordinary mail.

                                                                   S/Julie Owens
                                                                   Case Manager, (313) 234-5160